**LOCAL NO. 2880, LUMBER & SAWMILL WORKERS UNION, UNITED BROTHERHOOD OF CARPENTERS & JOINERS OF AMERICA, A. F. OF L., v. NATIONAL LABOR RELATIONS BOARD.**

**NATIONAL LABOR RELATIONS BOARD v. PORTLAND LUMBER MILLS.**

**No. 11230.**

Circuit Court of Appeals, Ninth Circuit.

Nov. 22, 1946.

Rehearing Denied Dec. 28, 1946.

Before DENMAN, BONE, and ORR, Circuit Judges.

DENMAN, Circuit Judge.

Local No. 2880, Lumber & Sawmill Workers Union, A. F. of L., hereinafter called Local No. 2880, petitions for a review by this court and a stay of and a decree setting aside an order of the National Labor Relations Board holding that the Portland Lumber Mills, a corporation, hereinafter called the Company, had violated sections 8(1) and 8(3) of the National Labor Relations Act,[1] in discharging from its employ one Wilmarth, a skilled employee holding the important lumber milling position of head marker.

The union's status is that of intervenor under the provisions of section 10(b) of the Act. The Board's order directed the Company to cease and desist from "engaging in any like or related acts" and to reinstate and make whole the discharged Wilmarth. It cross-petitions the court for a decree of its enforcement.

None of the essential facts are in dispute. On May 3, 1940, was held a Board election for a bargaining agent for the Company's employees wherein the International Woodworkers Association, CIO, hereinafter called IWA and Local 2880 appeared on the ballot. The election was won by Local 2880. The Company entered into a closed shop agreement with Local 2880 covering all the Company's employees, with certain exclusions, containing a clause providing for annual automatic renewal unless notice of termination or modification

Wettrick, Flood & O'Brien, of Seattle, Wash., for petitioner.

Gerhard P. Van Arkel, Gen. Counsel, N.L.R.B., Morris P. Glushien, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, Joseph B. Robison and Margaret M. Farmer, Attys., N.L.R.B., all of Washington, D. C., for respondent N.L.R.B.

Sabin & Malarkey, Robert L. Sabin, Neil Malarkey, and Howard H. Campbell, all of Portland, Or., for respondent Portland Lumber Mills.

[1] "Sec. 8. It shall be an unfair labor practice for an employer—

"(1) To interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7." 29 U.S. C.A. § 158(1).

"Sec. 7. Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities, for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C.A. § 157.

"Sec. 8. * * *

"(3) By discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: Provided, That nothing [in this act] * * * or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization (not established, maintained, or assisted by any action defined [in this Act] as an unfair labor practice) to require as a condition of employment membership therein, if such labor organization is the representative of the employees as provided in section 9 (a) in the appropriate collective bargaining unit covered by such agreement when made." 29 U.S.C.A. § 158(3).

was given by either party to the contract prior to May 3 of each succeeding year. This contract, as modified by certain supplemental agreements but still containing the closed shop provisions, was automatically renewed on May 3, 1944, for an additional year, on failure of either of the parties thereto to give notice in writing, thirty days prior to May 3, 1944, of an intention to terminate. However, on April 1, 1944, the IWA filed a petition for investigation and certification of representatives covering the employees included in the contract under Section 9(c) of the Act. Thereafter the Board found that the automatic renewal of the contract did not constitute a bar to any investigation and certification of representatives, in view of the timely filing of the petition, and ordered an election. The election, in which Local 2880 and IWA only appeared on the ballot, was held June 23, 1944. The IWA lost the election.

During the conduct of the election, at the request of an IWA official, Ward Wilmarth, a head marker employed by the Company since 1939 and at the time a member in good standing of Local 2880, acted as an observer for the IWA. About July 13, Wilmarth received a letter of date July 12 from the Portland District Council of Lumber and Sawmill Workers, enclosing the following charge:

"July 11, 1944
"Portland District Council of
Lumber and Sawmill Workers
Delegates:

I, James Whallon, Business Agent of The Portland District Council of Lumber and Sawmill Workers, Hereby, charge Ward Wilmarth with violation of the obligation he took when becoming a member of Local No. 2880, and the United Brotherhood of Carpenters and Joiners of America, by giving aid and support to a dual organization, with the intent to disrupt our organization.

To-wit: On June 23, 1944, Ward Wilmarth acted as an observer for the IWA, Local 5-#, CIO, at an election held for the purpose of taking the collective bargaining rights away from the Lumber and Sawmill Workers Union Local No. 2880, at the Portland Lumber Mills in Portland, Oregon.

Fraternally yours,
James Whallon,
Business Agent."

Prior to August 16, when Wilmarth was tried on the above charge at a meeting of the Portland District Council, Wilmarth was in the office of G. A. Robertson, Treasurer of the Company, and at that time Robertson was shown and read the letter and charge.

On August 18, Robertson was handed the following letter by one of the members of Local 2880's Plant Committee who signed it:

"Dear Sir:

This is to inform you that, one of your employees, Ward Wilmarth, no longer belongs to the Union, having forfeited his membership. We therefore, request that he be discharged in accordance with Article (1), of our Working Agreement.

Very truly yours,
Lumber & Sawmill Workers
Union Local No. 2880."

After the receipt of the above communication from Local 2880 and on the following Monday, August 21, just before quitting time, Robertson sent for and delivered to Wilmarth a letter to which was attached Wilmarth's wage check in full. The body of the letter read

"Mr. Ward Wilmarth
Plant
Dear Sir:

This is to advise you that under date of August 18th, 1944, we received written notice from the Plant Committee of Local Union 2880 that you had not complied with Article I of the existing union shop contract between the Local and the Portland Lumber Mills, and calling upon us to discharge you in accordance with Article I.

We are therefore paying you off at this time, August 18th, 1944 and wish to advise you that you are discharged and that the relation of employer and employee is severed, all in accordance with Article I.

Yours very truly,
Portland Lumber Mills
By /s/ G. A. Robertson
Treasurer."

When he received the letter and his pay check, Wilmarth excused himself, went to the entrance of the building where he secured the Portland District Council letter to him of July 12 as well as the written charge against him, returned to Robertson's office and had Robertson reread the letter and the charge. The Company's Vice-President L. R. Hubbard, who came into the office about this time, also read the letter and the charge. Wilmarth then left after stating that there probably would be further proceedings in the matter. He has not since been re-employed by the Company. Wilmarth's work with the Company was satisfactory. The Company had no reason for discharging him other than the demand of Local 2880.

We agree with the Board that the Company was fully advised of the ground of Wilmarth's expulsion from the union and that Wilmarth was discharged by the Company because his activities at the election caused the union to forfeit his membership in it.

The pertinent portions of the closed shop agreement of May 3, 1940, so automatically renewed for the year beginning May 3, 1944, are

"It is the desire of the parties hereto that the employees covered by this Agreement shall maintain membership in good standing in the Union. In order that this desire may be effected and the Union may discipline its members for the effective operation of this Agreement, the Company agrees to release from its employ any person, upon formal demand from the Union, who fails or refuses to maintain membership in good standing in the Union. It is expressly understood and agreed that all present employee members of the Union shall maintain membership in the Union, and present employees who are not members shall secure membership in the Union within a reasonable length of time and maintain such membership.

\* \* \* \* \*

"The Union, being the sole judge of its membership, shall have the right to give written notice to the Company that a named employee or employees have not complied with membership according to its rules, and the Company, thereupon, shall within fifteen (15) days discharge such employee."

The Board's construction of the proviso of section 8(3) with relation to Section 7 conferring on Wilmarth and all employees the right "to bargain collectively through representatives of their own choosing," as not warranting a discharge for activities at an election for such choice is so obviously rational that we well could be required to accept it under the rule that upon "Questions of law, the experienced judgment of the Board is entitled to great weight." Medo Corporation v. National Labor Relations Board, 321 U.S. 678, 681, 64 S.Ct. 830, 832, 88 L.Ed. 1007.

However, we are of the opinion that it is the only interpretation to be given the proviso of section 8(3) for closed shop contracts. Such contracts are generally drawn, as here, in the anticipation that during their currency there will be elections at which the employees will be given their opportunity to choose the bargaining agent through whom, as provided in Section 7, they will "bargain collectively" with their employers. If they are to exercise this right under Section 7 in terrorem of discharge, because its exercise may displease the union successful at the election, that "labor organization" would be "assisted by \* \* \* action defined in \* \* \* [section 8(1)] as an unfair labor practice" in violation of the express language of the proviso.

We agree with the Board that its conclusion is supported by the following from the decision of the Supreme Court in Wallace Corporation v. National Labor Relations Board, 323 U.S. 248, 256, 65 S.Ct. 238, 89 L.Ed. 216,

"\* \* \* We do not construe the provision authorizing a closed shop contract as indicating an intention on the part of Congress to authorize a majority of workers and a company, as in the instant case, to penalize minority groups of workers by depriving them of that full freedom of association and self-organization which it

was the prime purpose of the Act to protect for all workers * * *."

We construe the discharge provision of the instant closed shop contract as not intended to include an obligation on the employer to discharge an employee for the exercise of the latter's right to seek at an election for his bargaining agent a labor organization other than the one having an existent closed shop contract. If the union is so organized that exercising such right at the election prevents an employee, otherwise complying with the union's membership requirements, from remaining in the membership—that is if the union is organized so to compel the closed shop employer to commit an unfair labor practice—such a union is ineligible to become a party to a closed shop contract under the provisions of section 8(3).

We have used the phrase "in terrorem" advisedly. For many years in the towns and villages of the lumber industry of the far Western States there has existed a bitter inter-union conflict between the branches of the two great national unions. A large percentage of this labor is made up of permanent residents. Deprivation of employment in the local mill or mills well may mean the loss of installments on the purchase of the family home, the disturbance of the children's education by removal to a distant place of the father's employment, if he can find one, and the dislocation of long established intimacies of relations with neighboring friends. It was to make the family man more secure in his local employment and not to create such dislocation that the closed shop provisions of the National Labor Relations Act were created.

Further, in many of these mill towns the voting is close between the two unions. Elections are warmly contested under our democratic system. During a reasonable period before election there should be the freest of open advocacy of the divergent views of the voters. The question of the length of the electioneering period is not before us, since here the act leading to the employer's discharge of Wilmarth occurred at the election itself.

The charge on which Wilmarth was tried and let out of the union was his action "at an election held for the purpose of taking the collective bargaining rights away from the Lumber and Sawmill Workers Union Local No. 2880, at the Portland Lumber Mills in Portland, Oregon."

In many closed shop elections as much as forty percent of the voters vote for a union of which they are not members "for the purpose of taking the collective bargaining rights away from" the union which the closed shop agreement compelled them to join. Certainly all the vocal advocates of such a "taking away" are as likely as Wilmarth to dismissal from the union and from employment. Indeed, all the persons so voting would be doing so for such a "purpose" and likely to lose their jobs. It is not a fanciful conjecture that, in a time of shortage of labor, such electioneering for the unsuccessful union would deprive the mill of the necessary employees for half its operations—with the result of a halved output of lumber, in a period of general acceptance of the principle of an economy of abundance.

The Board's decision in no way detracts from the benefits Congress conceived in enacting the closed shop proviso. The Board's interpretation, in addition to confirming the democratic process in bargaining agency elections, prevents the use of the proviso for the perpetuation of a particular union's control of the employees, once it enters into a closed shop contract with their employer. Employers well may be perplexed by borderline cases of fact as to whether their employees' dismissals from a closed shop union are for such electioneering for a rival union or for some of many other union reasons warranting their dismissal, but the history of the litigation of the last fourteen years shows that perplexities of employer, employee, and union are necessary incidents of such far reaching legislation as the National Labor Relations Act, 29 U.S.C.A. § 151 et seq.

The petition of Local 2880 is ordered denied. The petition of the Board for the enforcement of its order is ordered granted.

On Petition for Rehearing.

PER CURIAM.

The petitioner for rehearing argues that because of our decision construing its closed shop contract with its employer, as follows:

"We construe the discharge provision of the instant closed shop contract as not intended to include an obligation on the employer to discharge an employee for the exercise of the latter's right to seek at an election for his bargaining agent a labor organization other than the one having an existent closed shop contract,"

and because if we held otherwise the employee would be held "in terrorem" from exercising his rights at an election, "this court apprehends some doubt about the economic propriety of closed shop contract in the lumber industry."

The contention is unwarrantable. The petitioner does not deny that the employee is so held in terrorem of violation of the union's requirements of its members. Such fear is obvious and Congress well may be presumed to have recognized its existence as a factor in making effective all proper closed shop contracts. Because it is an effective factor as to all the legal incidents of a closed shop contract nonetheless makes such fear a factor in a union's wrongful attempt to defeat the Congressional purpose to democratize the employees' organization by a free election of their bargaining agent.

The petition for rehearing is denied.