**COLGATE–PALMOLIVE–PEET CO. v. NATIONAL LABOR RELATIONS BOARD (INTERNATIONAL CHEMICAL WORKERS UNION, A.F.L., et al., Interveners).**

**NATIONAL LABOR RELATIONS BOARD v. COLGATE–PALMOLIVE–PEET CO.**

No. 11514.

United States Court of Appeals Ninth Circuit.

Jan. 13, 1949.

Rehearing Denied Feb. 4, 1949.

Philip S. Ehrlich, Bartley C. Crum, and R. J. Hecht, all of San Francisco, Cal., for petitioner.

David P. Findling, Associate Gen. Counsel, Ruth Weyand, Acting Asst. Gen. Counsel, and Marcel Mallet-Prevost and Bernard Dunau, Attys., NLRB, all of Washington, D. C., for respondent.

Before MATHEWS, HEALY, and BONE, Circuit Judges.

HEALY, Circuit Judge.

This matter is here on petition of Colgate-Palmolive-Peet Company to set aside an order of the National Labor Relations Board, and on the Board's cross-petition for the enforcement of its order.

The case relates to Colgate's discharge of and its refusal to reinstate certain employees, thirty-seven in number, a course determined by the Board to be discriminatory under § 8(1) and (3) of the Act. 29 U.S.C.A. § 158(1, 3). The illegality of Colgate's conduct, as determined by the Board, resides in its discharge of the employees pursuant to a closed-shop contract on demand of the union party thereto which had suspended the employees because of their activities in favor of a rival union at a time when activities looking toward a change of bargaining representatives were appropriate.

The closed-shop contract was between Colgate and a local of the CIO. It was entered into in 1941 for a term of indefinite duration, that is, "until changes become necessary because of conditions beyond the control of the Company or are requested by the employees through their representatives." A condition of employment was that employees be "members in good standing" of the union. On July 24, 1945, a supplemental agreement was made extending the contract by providing that it should remain in effect pending the approval or disapproval by the Tenth Regional War Labor Board of certain changes.

Dissatisfaction with the CIO representation had been developing among Colgate's employees for some six months before the extension. Agitation was rife for the unhorsing of that union and the substitution of the AFL as bargaining representative. Organizational efforts of the insurgents culminated shortly in a series of meetings attended by a substantial majority of the

employees, and in a vote to affiliate with the AFL. Steps were then taken to secure a change of representation by resort to formal Board process. The CIO countered with a series of suspensions followed by discharge-demands predicated on the suspensions, with the result that the employees here involved were discharged. These constituted substantially the ringleaders of the insurgent group.

The Board found as ultimate facts (a) that the CIO sought to use the closed-shop contract for the purpose of punishing the insurgents, and (b) that Colgate acceded to its discharge-demands notwithstanding Colgate knew that the union had suspended the men in reprisal for their activities in favor of the rival union. The evidence abundantly supports these findings. As a matter of law, the Board determined that the closed-shop contract did not preclude the employees from engaging in these activities at the time they did so. Its decision rests upon the reasoning followed in Matter of Rutland Court Owners, 44 NL RB 587; 46 NLRB 1040. This view had our approval in Local No. 2880 v. National Labor Relations Board, 9 Cir., 158 F.2d 365. The latter holding controls the present case.

The petition of Colgate is accordingly denied and a decree directed enforcing the Board's order in full.