**COURANT v. INTERNATIONAL PHOTOG-RAPHERS OF MOTION PICTURE IN-DUSTRY LOCAL 659 et al.**

No. 11972.

. United States Court of Appeals
Ninth Circuit.

.Sept. 13, 1949.

Henry B. Ely, Los Angeles, Cal., for appellant.

Bodkin, Breslin & Luddy, Henry G. Bodkin, George M. Breslin and Michael G. Luddy, Los Angeles, Cal., for appellees.

Before MATHEWS, STEPHENS and POPE, Circuit Judges.

STEPHENS, Circuit Judge.

The complaint is captioned as above indicated. However, the body of the complaint names International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada, and the proceedings as set out in the transcript indicate that the case was considered and the judgment entered in accordance with such allegations of the complaint. Herein, where we have mentioned ·International Photographers of the Motion Picture Industry Local 659, it

may be taken that we also include Herbert Aller in his individual and representative capacity.

The complaint in this case was dismissed by the United States district court because the court deemed it was without jurisdiction of the subject matter. The plaintiff in the suit appeals.

Taking the allegations of facts in the complaint as true, as indeed we must in this appeal, we brief them down to the following:

One of the defendants-appellees [International Photographers of the Motion Picture Industry Local 659] is an unincorporated labor organization with principal office in the Southern District of California, and is a "local" union chartered by the other defendant-appellee. The other defendant-appellee is a national unincorporated labor organization, calling itself the International Alliance of Theatrical Stage Employees and Motion Picture Machine Operators of the United States and Canada. The latter organization has within its membership all employees of over 90% of the producers of moving pictures in the United States.

Prior to June 23, 1947, the date of enactment of the Taft-Hartley Law, 29 U.S.C.A. § 141 et seq., and subsequent to December, 1942, the "Alliance" and its chartered locals successively have been the duly certified [N.L.R.B.] bargaining agents for all the employees [1] of moving picture producers-employers in California. All photographer-employees were by closed shop agreements entered upon during such period required to be members of Local 659.[2]

In the moving picture industry, appellant's work is known as a "first cameraman" or "director of photography." Since January 1, 1943, it has been the practiced policy of Local 659 to admit no new first cameramen as members of that organization. Appellant, by character and skill in his calling, is fully qualified in every way as a first cameraman to become a member of the union. He has made numerous applications for membership but, because of Local's policy not to admit new members and for part of the period covered by his claim of damages because he was not a citizen of the United States or Canada [see note 3], he has not been allowed to become a member. There has been work for first cameramen which he could have had, had he been a member of the union, but, with the exception of a few instances in which he was drastically limited in action, he has been kept out of work because of the combination of the closed membership policy of the union and the closed union shop contracts between the union and employers.

Appellant legally entered this country as a Polish national, but is now a citizen of the United States.

Appellant prays substantial money damages be awarded him against the unions for their actions as above set out. He alleges his right to become a member of the union and as to the jurisdiction of the United States district court to entertain his suit in the following language:

"Jurisdiction is founded on the existence of a Federal question and the amount in controversy, and on the existence of a question arising under the United States Constitution, Treaty and under particular Federal statutes.

"The action arises under the Constitution of the United States, Article 1, Section 8, Article 6, the Fifth Amendment to the Constitution of the United States, the Fourteenth Amendment to the Constitution of the United States, the National Labor Re-

---

1. For our purposes, the statement of fact is sufficient. The Alliance, however, has never been the elected bargaining agent for first cameramen as Local 659 has been and is.

2. The term of the last executed closed shop contracts extended to December 31, 1948, a date subsequent to the commencement of this action. The performance of these contracts remained obligatory to the end of their term and by express provision in the Taft-Hartley Law did not become an unfair labor practice. Title I § 102 of Act of June 23, 1947, 61 Stat. 152, 29 U.S.C.A. § 158 note. The Taft-Hartley Law, however, outlaws closed-shop agreements not within the above mentioned saving clause.

lations Act, 29 U.S.C.A. §§ 151–166, enacted July 5, 1935 Labor Management Relations Act of 1947, 29 U.S.C.A. §§ 141–197, enacted June 23, 1947; the Treaty between the United States and Poland of Friendship, Commerce and Consular Rights, 48 Stat. L. 1507; 28 U.S.C.A. § 41 (1, 8, 12, 13, 14, 17, 23 [now §§ 1331, 1332, 1337, 1341–1343, 1345, 1350, 354, 1359]); 8 U.S. C.A. §§ 41, 43, under color of §§ 921–923, Labor Code, State of California, and the laws of the State of California, 8 U.S.C.A. §§ 47, 48; 15 U.S.C.A. § 15; the matter exceeds, exclusive of interest and costs, the sum or value of $3,000; the Preamble and Articles 1, 2, 55 and 56 of the United Nations Charter, 59 Stat.L. [1035, 1037, 1045], 1046."

In his closing brief appellant asserts unqualifiedly that he is not relying upon any of the civil rights statutes or upon the Labor Code of California. It is readily seen that since, by the terms of the contract agreed to by the union, all of the employers in the industry would hire only members of the bargaining union and the union had closed its membership rolls to first cameramen, appellant without any fault of his own was effectively prevented from securing employment as a first camerman.

Query: Do the facts entitle appellant to the services of United States courts to recover compensatory damages from the Union?

Without discussion, we hold that the Treaty with Poland [3] and the United Nations Charter have nothing to do with the problem here presented, since, as will hereinafter appear, we find that the union activity involved was not governmental in character.

No argument or theory is advanced why the Fourteenth Amendment to the Constitution of the United States has any application to the claim. We therefore give it no consideration.

Only the claimed rights under the Sherman Act, 15 U.S.C.A. § 1 et seq., and the Fifth Amendment remain for discussion.

■ Appellant claims jurisdiction of federal court under the provisions of the Sherman Act, by averring in his complaint that the unions intend by their actions "to monopolize for themselves all positions of first cameramen within the motion picture industry" in California. The decisions of the Supreme Court are adverse to such claim. The cases of Apex Hosiery Co. v. Leader, 310 U.S. 469, 60 S.Ct. 982, 84 L.Ed. 1311, 128 A.L.R., 1044; United States v. Hutcheson, 312 U.S. 219, 61 S.Ct. 463, 85 L.Ed. 788; Allen Bradley Co. v. Local Union, No. 3, etc., 325 U.S. 797, 65 S.Ct. 1533, 89 L.Ed. 1939, and Hunt v. Crumboch, 325 U.S. 821, 65 S.Ct. 1545, 89 L.Ed. 1954, all hold to the principle that anti-trust or anti-monopoly legislation applies to labor unions only when the unions act in company and in co-operation with business concerns doing an interstate business for the purpose of restraining trade to the ultimate benefit of themselves. Appellant's own allegation is that the unions' acts were for their own benefit, and there is no suggestion in the complaint that any restraint of interstate trade was intended or was inherent in the acts as was the case in Allen Bradley Co. v. Local Union No. 3, etc., supra. The Sherman Act does not help appellant.

---

3. Appellant points to the Alliance's constitutional provision adopted in 1943 which provides that "No person shall be eligible to membership in said Alliance who is not a citizen of the United States or Canada, or of any other territory in which the Alliance exercises jurisdiction" as violative of the cited treaty. This contention has not been embodied in the text of our opinion as it is totally independent of the matter therein discussed. Up to the time of appellant's naturalization in 1947 and during part of the period covered in appellant's claim for damages, this provision did preclude his admittance to the membership rolls of Local 659. It suffices to say, in answer to appellant, that he can claim no more under the treaty than a denial of equal opportunity with citizens of this country. Compare Asakura v. Seattle, 265 U.S. 332, 44 S.Ct. 515, 68 L.Ed. 1041.

### The Claim Under the Fifth Amendment.

■ It is the theory of appellant that the Fifth Amendment to the Constitution of the United States gives him a right to relief and establishes the jurisdiction of the federal court. The Fifth Amendment relates to the invasion of the federal government and not to the violation of rights through the action of individuals against individuals. The argument, however, is that since the Congressional labor statutes authorize the appointment of labor unions (as well as any other organization or individual) to act as bargaining agent with employers as to various terms and conditions of employment, the agent becomes an arm of the government, hence the Fifth Amendment applies. That is, any resulting damage to appellant by failure of the union in the administration of its bargaining duty is compensable by the union as a governmental agency and it follows that a right of action is cognizable in federal courts. The pronouncements of the Supreme Court of the United States do not support this contention. On the contrary, the high court regards labor unions (or other entities) which may be chosen as bargaining agents as voluntary and not governmental in character, and not subject to judicial interference in their internal affairs so long as they fairly represent all of the employees within the class making the appointment. Steele v. Louisville & N. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173; Tunstall v. Brotherhood, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187.

Where members of the group which the union represents are discriminated against the United States Courts, as in Tunstall v. Brotherhood, supra, will take jurisdiction of the complaint. There is, however, no authority for the idea that the union has any corresponding duty toward persons not employed but who are employable. The duty found implicit in the Railroad Labor Act, 45 U.S.C.A. § 151 et seq., under which the Tunstall case, supra, and its companion, Steele v. Louisville & N. R. Co., supra, were decided, was one of fair representation of majority and minority employees alike, for whom the union became the bargaining agent. It does not necessarily follow that because this duty is inherent in the trust imposed upon the bargaining agent that it has any relation to federal interference as to the admission of members to the union. In the Steele and Tunstall cases, supra, the minority of employees for whom the union was bargaining agent and against whom the union had discriminated, were not members of the union nor were they required to be in order that the union represent them. Since the Congress has not reached so far, federal courts cannot assume that the present statutes should be so construed as to provide for the compensation of an individual because in the circumstances he has been deprived of work.[4] The case of Wallace Corp. v. N. L. R. B., 323 U.S. 248, 65 S.Ct. 238, 89 L.Ed. 216, relied upon by appellant, is authority for the principle that an employee cannot be discharged for non-union affiliation where the employer and the bargaining certified union have entered into a closed shop agreement. Compare Local No. 2880 etc. v. N. L. R. B., 9 Cir., 158 F.2d 365; Colgate-Palmolive-Peet Co. v. N. L. R. B., 9 Cir., 171 F.2d 956; Restatement of the Law of Torts (1939) v. 4, § 810. The Wallace case does not hold that the union has any duty to consider the plight of a person who is deprived of securing employment because of the union shop-closed membership combination.

4. In fact, the instant problem could not have appeared in the Steele and Tunstall cases, supra, because Congress chose not to authorize closed shop agreements in the Railway Labor Act. In contrast, the National Labor Relations Act (Wagner Act) expressly authorizes such contracts if "not established, maintained, or assisted by any action defined in this Act as an unfair labor practice." Section 8(3). That Act was designed to insure to employees the right to self-organization free from employer interference and enjoins only certain unfair practices on the part of employers. Compare A. F. of L. v. Watson, 327 U.S. 582, 66 S.Ct. 761, 90 L.Ed. 873, which involved a factual situation wholly dissimilar.

Appellant asks us to follow the course of the California decisions and hold that the course followed here by the unions is against public policy on the basis of the expression "the right to work", but as we have heretofore said, we think we cannot do so.[5] It follows that there is no federal question presented by appellant's allegation that he has been damaged by the acts of the union.

The judgment in accord with the order of dismissal is

Affirmed.

---

5.  See James v. Marinship Corp., 25 Cal.2d 721, 155 P.2d 329, 160 A.L.R. 900; Williams v. International Brotherhood, 27 Cal.2d 586, 165 P.2d 903; Dotson v. International Alliance, Cal.App., 191 P.2d 778 [hearing pending before Cal.Sup. Ct.]; Compare Schatte v. International Alliance, D.C.S.D.Cal., 70 F.Supp. 1008, affirmed, 9 Cir., 165 F.2d 216, certiorari denied, 334 U.S. 812, 68 S.Ct. 1018, 92 L.Ed. 1743; Summers, The Right to Join a Union, 47 Col.L.Rev. 33 (1947).