LUCE & COMPANY, *S. en C.*, Petitioner, *v.* PUERTO RICO LABOR RELATIONS BOARD, Respondent.

No. 8. Argued. March 7, 1950.—Decided May 10, 1950.

336

*Charles R. Hartzell* and *José L. Novas* for petitioner. *Vicente Géigel Polanco, Attorney General, A. Torres Braschi, Assistant Attorney General,* and *Hiram R. Cancio Vilella,* counsel for the Labor Relations Board, for respondent.

ON RECONSIDERATION

MR. JUSTICE SNYDER delivered the opinion of the Court.

This is a petition by Luce & Company for review of a Decision and Order of the Labor Relations Board that the company engaged in unfair labor practices as defined in § 8(1) (c) of Act No. 130, Laws of Puerto Rico, 1945, as amended by Act No. 6, Laws of Puerto Rico, 1946, known as the Labor Relations Act.[1]

The company is a member of the Sugar Producers Association of Puerto Rico. The Association entered into a collective bargaining agreement with the *Sindicato Azucarero de Puerto Rico* (CGT). The *Unión Local de Trabajadores de la Industria Azucarera de Santa Isabel, Puerto Rico,* hereinafter called the "local union", is affiliated with the Sindicato. The agreement contained a maintenance of membership clause pursuant to which members of the local union at the time of the agreement and those who thereafter joined it were required, as a condition of employment, to maintain themselves in good standing as members of the union for the duration of the contract. This clause also provided that on notice by the union that such an employee has not complied with the rules and regulations of the union, the company shall suspend him temporarily or permanently, as the case may be.

In February and March, 1947 the company discharged seven of its employees pursuant to a demand by the President

---

[1] On November 30, 1949 we entered a judgment reversing the Decision and Order. The Board filed a motion for reconsideration and the company filed a reply. On March 7, 1950 the motion for reconsideration was submitted after the Board filed a memorandum answering the reply of the company.

of the local union that they be discharged on the ground that they had not paid their union dues. Shortly thereafter, the *Unión de Obreros Independientes de la Industria Azucarera de Puerto Rico*, hereinafter called the "independent union", filed charges with the Board relating to these discharges. However, before a formal complaint was filed, on April 14, 1947 the Company reinstated all the men who had been discharged, except one who could not be located and another who had already been restored to his position on March 10, 1947.

Despite this action by the company, the Board issued a complaint against it. The Board heard the case and issued an Order and Decision in which it held that in discharging the seven employees in question the company had engaged in unfair labor practices as defined by § 8(1)(c) of the Act. It ordered the company to desist from discouraging membership in the independent union and from encouraging membership in the local union by discriminatory discharges. It also ordered the company to compensate the seven discharged employees for any losses they suffered during the several weeks they were not employed by the company. The case is here for review under § 9(2)(b) of the Act.

■■ Before discussing the facts of this case, it is desirable to clarify two points. *First*—Under the Act an employer is entitled to discharge his employees for good cause or for no cause at all, including mere caprice, provided it is not for union considerations. *Labor Board* v. *Jones & Laughlin*, 301 U.S. 1, 45. Consequently, in the ordinary case there is a dispute on the facts as to whether an employee was discharged for union considerations. But here the situation is different. The company conceded that the discharges were for union considerations. And such discharges are ordinarily discriminatory and violative of § 8(1)(c). However, the company seeks to show that it comes within an exception to the general rule on the ground that under the *Proviso* of § 8(1)(c) these discharges were required by

virtue of a union security clause.[2] Under those circumstances, to avoid the contention that the discharges were discriminatory, the company must show that its conduct was protected by the *Proviso* in § 8(1) (c).

 *Second*—In this case the discharges took place under a maintenance of membership clause. It is therefore important to note that an employer's responsibility is greater under such a clause than under a closed shop or union shop clause. Under a closed shop clause a man seeking a job must be a union member before he can be hired and he must remain such for the duration of the contract. Under a union shop clause the employer retains the right to employ any one he wishes, whether or not he is a member of the union, but the employees are required to join the union within a certain time and thereafter to remain such for the duration of the contract. *Phoenixville Publishing Co. and American Newspaper Guild*, 2 L.A. 10 (1946), reprinted in Shulman and Chamberlain, *Cases on Labor Law*, p. 1189. Under a maintenance of membership clause an employee need not be a member of the union at the time the contract is signed, and he is not obliged to join the union to retain his employment. This clause requires merely that if an employee is a member of the union on a certain date after the agreement is executed or thereafter joins it, he must remain such for the duration of the contract. Manoff, *The National War Labor Board and the Maintenance of Membership Clause*, 57 Harv.

---

[2] Section 8(1) (c) makes it an unfair labor practice: "To encourage, discourage or attempt to encourage or discourage membership in any labor organization by discrimination in regard to hiring, firing, or in connection with the tenure or other terms or conditions of employment, including a lockout; *Provided*, That nothing herein contained prohibits an employer from making an all-union shop contract or a maintenance of membership agreement with any labor organization that has not been established, maintained or assisted by any action defined in this Act as an unfair labor practice, if such labor organization represents a majority of the employees in an appropriate unit with authority for collective bargaining."

L.Rev. 183; Freiden, *Some New Discharge Problems Under Union Security Covenants*, 4 Wisc. L. Rev. 440, footnote 1.[3]

The nature of these clauses makes it evident why an employer may discharge an employee at the request of the union under a closed shop or union shop clause without making the type of investigation he is required to make under a maintenance of membership clause. Under the former, all the employees must be members of the union as a condition of employment. Consequently, the employer must at the request of the union discharge an employee who is not or ceases to be a member of the union. The Supreme Court has recently held that this must be done even where the employer knows that the employee was expelled from the union on account of activity in behalf of a rival union. And the Court so held although the employee's conduct occurred at a time when it was appropriate for the employees to seek a redetermination as to the union they wished to represent them. *Colgate Co.* v. *Labor Board*, 338 U.S. 355.

A different situation exists under a maintenance of membership clause. Here an employee may never have been a member of the union or may have withdrawn prior to execution of the contract. The employer therefore may not discharge an employee on the mere request of the union. He must make a reasonable investigation to determine if the employee involved is covered by the maintenance of membership clause. If he makes no such investigation and instead

---

[3] Section 2 provides that when used in the Act:

"(7) The term 'all-union agreement' shall mean an agreement between an employer and the representative of his employees in a collective bargaining unit whereby it is required as a condition of employment, that all the employees in such unit be members of a single labor organization.

"(8) The term 'maintenance of membership agreement' shall mean the agreement between an employer and the representatives of his employees in a collective bargaining unit whereby it is required as a condition of employment, of all the employees who are members of the union at the time of the execution of the agreement or at other times thereafter, and under such other conditions as may be specified in the agreement, that they maintain themselves in good standing as members of the union during the life of the contract."

discharges the employee at the request of the union, he does so at his peril. And if it is ultimately established that the employee was not within the clause, the discharge is discriminatory and violative of § 8(1)(c) rather than within the exception of the *Proviso* thereof. *Idarado Mining Company*, 77 NLRB 392 (1945); *In the Matter of Baker & Company, Inc.*, 68 NLRB 830 (1946). *Cf. In the Matter of Eureka Vacuum Cleaner Company*, 69 NLRB 878, 881 (1946); *Colonie Fibre Co.* v. *National Labor Relations Board*, 163 F.(2) 65 (C.A. 2, 1947). Any other rule would in effect permit a union to force non-members to join the union against their wishes contrary to the express provisions of the maintenance of membership clause and in violation of the rights guaranteed to employees in § 4 of the Act.[4] It would be converting a maintenance of membership clause into a closed shop clause by unilateral determination of the union.

With the foregoing considerations in mind, we examine first the case of Juan Borrero. The Board found that he was never a member of the local union; that nevertheless he was discharged by the company on demand of the local union; and that at the time of the discharge he was a member of the independent union. The case of this employee is simple. The company made no investigation to determine whether he was a member of the local union at the time the contract was executed or whether he thereafter joined it. It merely granted the request of the local union for his discharge. It therefore did not establish that his discharge came within the *Proviso* of § 8(1)(c).

The only possible defense as to this case is raised for the first time in the company's reply to the Board's motion for reconsideration. In its own petition for review filed in this Court the company alleged that the discharges were "in per-

---

[4] Section 4 reads as follows: "Employees have, among others, the right of self-organization; to form, join or assist labor organizations; to bargain collectively through representatives *of their own choosing;* and to engage in concerted activities for the purpose of bargaining collectively or for other mutual aid and protection." (Italics ours.)

formance of a contractual obligation imposed by the *maintenance of membership clause* included in the Collective Agreement. . . .". (Italics ours.) And so far as we are aware it took the same position before the Board. Nevertheless, it now argues, in reply to the motion for reconsideration, that the contract did not provide exclusively for maintenance of membership. Instead, it asserts that this is a hybrid agreement, with closed shop, union shop and maintenance of membership clauses, and that under the agreement all or almost all the employees of the company had to be members of the local union as a condition of employment.

In the first place, it would be enough to dispose of this contention simply to quote § 9 (2) (a) of the Act which provides in part that "No objection that has not been raised before the Board or any of its members, agent or agency, shall be considered by the [Supreme] court, unless the failure or neglect to raise such objection be excused because of extraordinary circumstances."

In addition, we do not agree with the company on the merits of this contention. It is true that the agreement is hybrid and that paragraph (b) of the Section on "Recognition of the Labor Organization" provides for a union shop as to *new personnel*. On the other hand, clause (d), which is the only clause on which all concerned have hitherto relied as to this point, is admittedly a maintenance of membership clause for "present and old workers".[5]

---

[5] Clause (b) reads as follows: "It is expressly agreed among the parties that all new personnel will be obliged to join the Sindicato and to comply with all its rules and regulations as a condition of employment, and if anyone should fail to comply therewith, the local Union of the Sindicato will notify the Employer and he will be suspended from employment temporarily or permanently, as the case may be...."

Clause (d) reads as follows: "As to present and old workers employed by the Employer within the contracting unit, those who are members of the Union affiliated with the Sindicato, or who in the future join the Union, must as a condition of employment, maintain themselves in good standing as members of the union, complying with all its rules and regulations; and if they fail to comply with them, the local Union of the Sindicato will notify the Employer and they will be suspended from employment temporarily or permanently, as the case may be...."

The company now argues that clause (*b*) applies here. Its position is that under clause (*f*) of the agreement "new personnel" is defined as "all the workers who have never worked for the Employer or who, having worked in the 1946 or prior crop seasons, did not work in the said last crop season until the end of the same..."; that agricultural workers like those involved herein generally do not work until the end of the crop as that terminates on the last day cane is ground at the central; and that *all* workers do not work at cutting and hauling cane until the end of the crop because such work *usually* diminishes as the grinding progresses. But this argument is highly speculative. If the company wished to demonstrate that these particular discharged employees came under clause (*b*) as "new personnel" rather than under clause (*d*) as "present and old workers", it should either have asked the local union for some evidence on this question or have conducted its own investigation thereon. This point was never raised before the Board and there is no evidence in the record to sustain the company's position as applied to these particular employees. The company certainly did not believe in this point when the facts occurred. As we have seen, as soon as it discovered the situation, it immediately reinstated all seven employees. They of course were not entitled to reinstatement if clause (*b*) applied to them. We must therefore reject this contention both as to Borrero and as to the other six discharges.[6]

██ The next problem concerns four of the employees. As to them, the Board found the following facts: "They

---

[6] We likewise cannot agree with the contention of the company, which it makes for the first time in its reply to the motion for reconsideration, that clause (*e*) establishes a "*sui generis* variant of the closed shop." This clause reads as follows: "It is expressly agreed between the parties that by virtue of the certification by the Labor Relations Board of Puerto Rico of the Sindicato as exclusive contracting agent, and so long as said certification is not invalidated by law or by any subsequent revocation of the said agency, no worker or group of workers may allege to the Employer that he belongs to labor organizations other than the contracting union, in order to petition for conditions different from those established in this Agreement, nor may they dedicate themselves during the working

joined the local union in 1943, paying the initiation fee and monthly dues for a period of from one to three months; after this period, they failed to attend meetings of the said union; before 1944, they orally advised the leaders of the local union of their intention to withdraw from the same; they joined the independent union in the last months of 1946; they were discharged on demand of the local union during February and March, 1947. ... It is also necessary to point out that before 1944 the regulations of the local union did not contain any provision fixing the requirements with which its members must comply in order to withdraw from the union. Finally, the maintenance of membership collective bargaining agreement on which the defendant relies to sustain the legality of the discharges was signed on January 15, 1947. And there is no evidence to the effect that the said workers joined the local union subsequent to this date."

We agree with the Board that under the foregoing facts these four men were not members of the local union when the agreement was signed and did not thereafter join it. And we concur in the reasoning of the Board, as follows: "Their voluntary action in not paying duties, in not attending meetings and in *verbally notifying the leaders of the union of their withdrawal during 1943*, in our judgment constituted sufficient presentation of their resignations as members of the local union. We cannot conceive of a clearer manner of expressing a wish to withdraw from a voluntary association than that used by the said workers in this case, especially when the said acts took place at a time when the regulations

hours at the places of work to promoting antagonistic groups to impair the responsibility of the parties in the performance of this Agreement. Provided, that the Employer will suspend from employment, on petition of the local Union of the Sindicato, any worker or group of workers for violation of this clause, if said charges are proved before the Grievance Committee."

The company characterizes this clause as "imprecise and even confusing". However, we need not pass on it at this time, except to say that it cannot be read as overriding completely clause (d) which as we have seen provides merely for maintenance of membership for "present and old workers".

of the union did not require any special procedure for the presentation of resignations. To accept the contrary conclusion would put us in the position of deciding that while the local union maintained the names of the said workmen in its register, they would have to be considered as members of the said organization, irrespective of their repeatedly expressed wishes to withdraw from the local union and irrespective of the time that elapsed. Nothing, in our judgment would be more of an invasion of the rights of employees guaranteed by § 4 of the Act, restraining their freedom of association and forcing them to remain as members of the said union." (Italics ours.)

If the company had conducted a reasonable investigation, by interrogating both the men involved and union officials, these facts would have been uncovered. Consequently, for the reasons noted above as to the responsibilities of an employer under a maintenance of membership clause, the company discharged these four men at its own risk when it did so without such an investigation. And in discharging them at the request of the local union of which they were not members when the agreement was signed and which they did not thereafter join, the company committed unfair labor practices in violation of § 8(1)(c).

As to the remaining two workers, their cases were different, for our purposes, in one respect from those just considered: The Board found that they were members of the local union when Article XII of the Regulations of the local union went into effect. That Article requires notice in writing and acceptance by the Directors of the local union for a resignation to be valid.[7]

---

[7] Article XII, entitled "Discipline", reads as follows: "Any member of this union who wishes to withdraw from the same must do so in writing, addressing himself to the Directors and when the said Directors at an extraordinary assembly approve the said withdrawal, they will send him a communication, releasing him; while this is not done he continues as a member of this union with all the duties and obligations thereof."

The position of the company before the Board was that since these two workers did not submit their resignations in *writing* before the collective bargaining agreement was executed, they were properly discharged at the request of the local union for failure to pay their union dues. The company argued that Article XII contained two independent requirements, namely, resignation in writing and acceptance by the directors; that even assuming the illegality of the latter, the former was in effect; that these two employees did not resign in writing; that consequently they were members of the local union when the agreement was signed; and that the company was therefore justified in discharging them at the request of the local union.

We must therefore first determine whether Article XII consists of two independent requirements or whether it must be considered as a single integrated whole. We agree with the Board that the two steps—writing and acceptance—are not independent. Rather, as the Board held, they represent a single and complete procedure. The writing is merely the method of initiating the procedure for resignation which may be completed only by acceptance. The two steps cannot be separated as to legality, and Article XII is either valid or null as a whole. *Cf. Tugwell* v. *District Court*, 64 P.R.R. 213.[7a]

We turn next to the problem of whether Article XII is valid when read as a whole. The Board held that as so read Article XII is "arbitrary and unreasonable and constitutes an unjustified interference with the rights of employees guaranteed by the Act." It stated that "To uphold the valid-

---

[7a] In view of our holding that Article XII consists of a single integrated provision rather than two independent parts, we do not stop to determine whether a regulation would be valid if it provided, without more, that a resignation must be submitted in writing. *Cf. Bendix Aviation Corporation and United Automobile Union*, 15 L.R.R.M. 2650, 52; *American Car & Foundry Co. and Industrial Union of Marine and Shipbuilding Workers of America*, 11 L.R.R.M. 2582, 83; *Progressive Grocers' Ass'n* v. *Golden*, 128 F.(2) 318 (C.A.,D.C., 1942).

ity of this provision would be equivalent to placing the members of the local union in a state of slavery, forcing them to remain in the union until the Directors thought it advisable to approve their resignations and submitting them to the loss of their jobs as happened in this case after negotiation of a maintenance of membership agreement. There is no doubt that, under these circumstances, the fear of losing his job would serve as a restraint on the worker in the exercise of the complete freedom of organization which the Act gurantees him. The union would have almost complete control over the will of its members and it would be highly difficult for them to obtain a change of affiliation when they desired it. We do not believe that result can be sustained in the light of the public policy embodied in the Act.[8] We cannot allow the will of the directors of a union to be the deciding factor, on final analysis, on the question of the change of affiliation of the members of that union."

The Board went on to point out that although the internal affairs of a union are the concern of its members, that principle may not be used as an obstacle against the execution by the Board of the public policies embodied in the Act. Consequently, it said, "In those cases in which, as in the present case, a conflict arises between the standards established by a labor organization for its internal administration and the rights of employees guaranteed by the Puerto Rico Labor Relations Act, this Board has no alternative other than to make the rights of employees prevail."

We agree with the reasoning and the result reached by the Board as to the validity of Article XII as a whole. A voluntary association may not validly provide that an indispensable requisite for withdrawal therefrom is acceptance

---

[8] At this point the Board quoted in a footnote § 1(3) of the Act which reads as follows: "By means of collective bargaining, terms and conditions of employment are to be established. For the purposes of such bargaining employers and employees shall have the right of forming organizations of their own choosing."

of a resignation. *Haynes* v. *Annadale Golf Club*, 47 P.(2) 470 (Calif., 1935); Annotation, 99 A.L.R. 1441; Ann. Cases 1913 C 398; see *Braddom* v. *Three Point Coal Corporation*, 157 S.W.(2) 349 (Ky., 1941). This rule applies with even more force where as here the rights of employees to select freely their representative for collective bargaining are specifically made a matter of public policy by statute. And application of this policy is particularly apt in a case where a union, prior to signing an agreement with a maintenance of membership clause, refuses or fails to accept a resignation and then, after execution of the agreement, requests discharge of the alleged member for failure to pay dues. See Manoff, *su-, pra*, p. 216 *et seq.* As pointed out by the Board, of approval of such a procedure would permit the union to force an employee to remain a member of a union which has not yet obtained a maintenance of membership agreement, contrary to the public policy of the Act that he is entitled to withdraw before execution thereof.[9]

We are aware of the fact that "this is a contest primarily between labor unions for control", and that "In reality whatever interference or discrimination was present here came not from the employer, but from fellow-employees of the dischargees." *Colgate Co.* v. *Labor Board, supra*, pp. 364, 363. We also realize that our conclusion means in effect that the company was required not only to ascertain the contents of Article XII of the union regulations but also to determine that it was invalid and therefore that the oral resignation of these two employees prior to execution of the agreement was valid.

[9] *Cf. Steele* v. *L. & N. R. Co.*, 323 U.S. 192; *National Labor Relations Bd.* v. *American White Cross Lab.*, 160 F.(2) 75 (C.A. 2, 1947); *Ford Motor Co. and United Automobile Workers* (Opinion A–74, 1944), Shulman and Chamberlain, *supra*, p. 1218; *American Telephone & Telegraph Co., Long Lines Dept., et al., id.*, p. 1206; *Link-Belt Speeder Corp. et al., id.*, p. 1252; *Matter of John Wood Mfg. Co.*, Cox, Cases on Labor Law, p. 1224; *Carroll* v. *Local No. 269, etc.*, 31 A.(2) 223 (N.J., 1943); *Betts* v. *Easley*, 169 P.(2) 831 (Kans., 1946); IV Restatement, Torts, § 811, Comment *a*, p. 169; 59 Yale L. J. 1302; Witmer, Civil Liberties and the Trade Union, 50 Yale L. J. 621; 60 Harv. L. Rev. 834; 21 So. Calif. L. Rev. 419; 56 Yale L. J. 731; 14 A.L.R. 1446.

But we see no escape from this seemingly harsh rule if the company has voluntarily agreed to a maintenance of membership agreement which makes it mandatory on the company to ascertain that a request to discharge involves a person who was a member of the union when the contract was signed or who thereafter joined it. Faced with a request at the bargaining table for such a clause, an employer may safeguard himself to a great extent by insisting on specific provisions in the contract for identifying members of the union and for arbitration of this particular type of dispute. Freiden, *supra*, pp. 441, 451 *et seq.*[10] But having agreed to the clause, the employer is bound by it and is presumed to know what a reasonable investigation would show as to the status of each employee.

We are by no means holding that it is the duty of an employer in every case to determine if a particular regulation of a union is void. On the contrary, as the Board pointed out, the internal affairs of a union are ordinarily exclusively the concern of its members. See *Rivera* v. *Labor Relations Board*, 70 P.R.R. 320, 326, footnote 4; Aaron and Komaroff, Statutory Regulation of Internal Union Affairs, 44 Ill. L. Rev. 425, 631. But, as we pointed out in the *Rivera* case at pp. 332–333, "situations may arise in which the employer is not bound to comply blindly with the petition of the Union, and if it does, it engages in an unfair labor practice. This is specially so when the employer is or may be aware that the action of the Union in not admitting or expelling a member [or not accepting his resignation] has been in violation of the rights of laborers recognized by the Labor Relations Act." (Matter in brackets ours). And see 59 Harv.L.Rev.

---

[10] As no request for arbitration was ever made here, we do not pass on the question of whether the company would have been entitled under the arbitration clause herein to submit the issue of the status of these employees to arbitration. *Cf. In the Matter of Baker & Company, Inc.*, *supra*, pp. 831, 840–41 and *In the Matter of Phelps Dodge Copper Products Corporation*, 63 N.L.R.B. 686, 704, 710–11, with *Labor Relations Board* v. *New York & Porto Rico Steamship Co.*, 69 P.R.R. 730, 741.

976, 980. Although in the overwhelming majority of the cases an employer may rely on a union regulation, he cannot in a case involving maintenance of membership take refuge in a regulation as palpably invalid as Article XII.[11]

We find it unnecessary to pass on the alternative holding of the Board that these two employees were in any event not covered by the maintenance of membership clause on the ground that they were not members of the union in good standing at the time the contract was signed because they had failed to pay dues, had not attended meetings and had notified the leaders of the union of their wish to withdraw from the union. The question we leave open is whether the cases cited in support of this ruling of the Board are applicable, in view of the somewhat different phraseology used in the maintenance of membership clause in those cases as compared with the similar clause herein. *Cf. In the Matter of Phelps Dodge Copper Products Corporation, supra,* p. 710; *In the Matter of Baker & Company, Inc., supra,* pp. 831, 841.

 It remains only to note that the remedy utilized by the Board was to order the company to desist not only from encouraging membership in the local union but also from discouraging membership in the independent union. Despite the fact that the company was unaware of the existence of the independent union, the latter provision was proper. It is immaterial that, as the Board stated, "the conduct of the defendant in this case appears to have been motivated by an

---

[11] In his dissenting opinion Mr. Justice Todd makes the point at page 3 that it is the Board, and not the employer, which ought to be vested with the power to determine if Article XII is invalid and therefore whether there has been an unfair labor practice. We do not disagree. In fact, that is exactly what we are holding in this case.

On final analysis, it was the Board, not the employer, which *decided* in this case that Article XII was invalid. The employer merely ran the risk it might so hold. In discharging the two men involved, it did so under the circumstances of this case on its own responsibility and with the risk that the Board and this Court might hold that the discharges were unwarranted. That is far from giving the employer any power to declare this particular Article invalid. It leaves that function where it belongs—in the Board and this Court.

erroneous concept of its responsibilities as an employer under a collective bargaining agreement, an error into which it was led by the demands of the union...". A company which discharges employees under a maintenance of membership clause assumes all the risks which its action entails. Although not intended by the company, the natural and logical consequences of its illegal conduct was to discourage membership in the independent union as well as to encourage membership in the local union. To remedy the situation, the Board was authorized to order the company to desist from the conduct which affected both unions.

Our opinion and judgment of November 30, 1949 will be set aside. The petition of the company for review will be dismissed and a judgment will be entered enforcing the Order and Decision of the Board.

Mr. Justice Negrón Fernández did not participate herein.

_____

MR. JUSTICE TODD, JR., dissenting in part.

I concur in the opinion of the Court insofar as it concerns and decides the cases of the first five employees.

I dissent as to the decision on the remaining two employees, pages 12 to 17 of the opinion.

In the opinion of the Court it is stated:

". . . We also realize that our conclusion means in effect that the company was required not only to ascertain the contents of Article XII of the union regulations but also to determine that it was invalid and therefore that the oral resignation of these two employees prior to the execution of the agreement was valid . . ."

And at page 17:

". . . . Although in the overwhelming majority of the cases an employer may rely on a union regulation, he cannot in a case involving maintenance of membership take refuge in a regulation as palpably invalid as Article XII."

In the first place, no authority is cited upholding the conclusion that it is the duty of the employer, under the rule that he should make a reasonable investigation before discharging a workman on request of the union, in a case of maintenance of membership, to determine on his own responsibility the validity or nullity of the different provisions of the union regulations. Nor have I been able to find any case or authority upholding such conclusion.

The rule, as pointed out in the opinion of the Court, is entirely to the contrary, that is, that the employer can not interfere with the internal affairs of the union. Much less can he, in my judgment, determine on his own account that a provision of the union regulations is void.

The case of *Rivera* v. *Labor Relations Board*, 70 P.R.R. 320 and the citations made at pages 332–3 to the effect that ". . . situations may arise in which the employer is not bound to comply blindly with the petition of the Union, and if it does, it engages in an unfair labor practice. This is specially so when the employer is or may be aware that the action of the Union in not admitting or expelling a member has been in violation of the rights of laborers recognized by the Labor Relations Act. . .", is no authority to support the conclusion of the court in this case. None of the cases cited in support of the above-copied statements [1] uphold such conclusion. It is clear from an examination thereof that they refer to a situation of facts and legal interpretations entirely different from the instant case.

It is one thing to say that in a particular case or situation the employer is not bound to comply, without first investi-

---

[1] Said cases are the following: *Local No. 2880, etc.* v. *National Labor Relations Board*, 158 F.2d 365 (C.C.A. 9, 1946), certiorari granted in 331 U.S. 798 and dismissed on motion of petitioner in 332 U.S. 845; *Wallace Corp.* v. *Labor Board*, 323 U.S. 248; *National Labor Relations Board* v. *American White Cross Lab.*, 160 F.2d 75 (C.C.A. 2, 1947); *Colonie Fibre Co.* v. *National Labor Relations Board*, 163 F.2d 65 (C.C.A. 2, 1947); *Steele* v. *L. & N. R. Co.*, 323 U.S. 192 and *Tunstail* v. *Brotherhood*, 323 U.S. 210 and Annotations in 95 A.L.R. 10; 160 A.L.R. 918; 166 A.L.R. 356; 97 A.L.R. 609, and 172 A.L.R. 1351.

gating if it is proper, with the request of the Union for discharging an employee, as is decided in connection with the other five employees and I agree, and quite another to impose on the employer the duty to assume the risk of deciding in advance whether certain provisions of the union regulations are valid or void—when it is the Labor Relations Board which is vested with the power to determine whether the employer or the union has committed any unfair labor practice, *Rivera* v. *Board, supra*.

To vest that power on the employer is to place him in a position which will inevitably increase the disputes between employers and employees, which is precisely what the Labor Relations Act sought to avoid. I consider that, in accordance with the Act, employers cannot interfere with the internal affairs of the unions and that, consequently, they are justified in assuming the validity of union regulations until they are declared void by the Labor Relations Board or by the courts of justice.

I believe that the rule laid down in this case is not justified by statute nor by judicial precedents, and that therefore, it is unnecessary and self-defeating.

As to the remaining two workers, the decision of the Board should be reversed.